UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CORAZON PASCUAL, | Case No: C 08-2906 SBA |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | Docket 41 |
| Defendant. | |

Plaintiff, Corazon Pascual ("Plaintiff"), filed the instant pro se action against the Social Security Administration ("SSA"), by and through Michael J. Astrue as its Commissioner, alleging that she was terminated and harassed on account of her age (67) and national origin (Filipino).  Her Complaint asserts claims under the Age Discrimination in Employment Act of 1967 ("ADEA") and Title VII of the Civil Rights Act of 1964, respectively.  The Court has jurisdiction under 28 U.S.C. § 1331.  The parties presently are before the Court on Defendant's motion for summary judgment.  Having read and considered the papers submitted, and being fully informed, the Court GRANTS Defendant's motion.[1]

I.      BACKGROUND

    A.      FACTUAL SUMMARY

On April 24, 2006, Plaintiff (Filipino, age 67) was hired as a Legal Assistant (Case Technician) in the San Francisco Office of Disability and Adjudication Review ("ODAR").  (Shie Decl. Ex. Y at 1.)  The ODAR is responsible for holding hearings conducted by Administrative Law Judges ("ALJs"), and issuing decisions as part of the SSA's process for determining whether

---

[1] The Court, in its discretion, finds that this motion is suitable for resolution without oral argument.

1  an applicant may receive benefits.  As of September 2007, 17 employees worked at the ODAR.

2  (Id. Ex. X, Investigative Summary at 7.)  Of those workers, six are African-American, two are

3  Asian, three are Caucasian, five are Filipino and one is Latino.  (Id.)  Thirteen of those employees

4  are over the age of 40.  (Id.)

5       The job duties of a Case Technician at the ODAR consist of providing "a full range of

6  technical and clerical support for the Administrative Law Judges … and other

7  technical/professional positions in the hearing office in processing cases…."  (Carradero Decl. Ex

8  A, Pascual Depo. Ex. A-5.)  Among other things, Plaintiff was responsible for closing and mailing

9  cases, inputting hearing tapes/CDs in the hearing office's recording system, filing closed cases and

10  photocopying documents.  (Id. Ex. A-21.)  Under the terms of the applicable collective bargaining

11  agreement, in order to become a career employee, Plaintiff had to successfully complete a one-year

12  probationary period.  (Higdon Decl. ¶¶ 3-4.)  Plaintiff signed a "Probationary Period Advisory

13  Notice" in which she acknowledged that "[a] probationary employee may be separated *at any time*

14  if either (sic) conduct, character or work performance is not satisfactory."  (Id. Ex. 2 (emphasis

15  added).)

16       The decision to hire Plaintiff was made by Emilia Montuya (Filipino, over age 50), who

17  then was Hearing Office Director for the San Francisco ODAR office.  (Montuya Decl. ¶ 2.)  In

18  that capacity, Montuya served as the principal management advisor to the Hearing Office Chief

19  Administrative Law Judge ("HOCALJ") and participated with the HOCALJ in the overall

20  management of the San Francisco ODAR office.  (Id. ¶ 3.)  Her responsibilities included

21  supervising ODAR employees and rendering decisions regarding the hiring, termination and

22  discipline of office staff.  (Id.)  Initially, Montuya assigned Group Supervisor Jenita Ford ("Ford")

23  (African-American, under 40) to supervise Plaintiff.  Because of Plaintiff's conflict with Ford,

24  Montuya changed her supervisor to Group Supervisor Eric Jimenez ("Jimenez") (Latino, over 40),

25  when he joined the office in October 2006.  (Ford Decl. ¶ 2; Jimenez Decl. ¶ 2; Montuya Decl. ¶ 7.)

26  However, Plaintiff could not get along with Jimenez either, prompting Montuya to return Plaintiff

27  to Ford's supervision.  (Montuya Decl. ¶ 7.)

28

1    Throughout her tenure at the ODAR, Plaintiff's job performance and conduct were

2    unsatisfactory, which management discussed with her on numerous occasions.   (Montuya Decl.

3    ¶¶ 4-7; Ford Decl. ¶¶ 3-5 and Ex. 1; Jiminez Decl. ¶¶ 3-6.)  Plaintiff's supervisors noted that it took

4    her an inordinate amount of time to complete basic tasks and in some instances she needed to be

5    retrained on how to perform such tasks.  (Id.)  Her level of productivity also did not meet

6    expectations.  (Id.)  Aside from her performance issues, Plaintiff was unreceptive to criticism or

7    correction and demonstrated an inability to work cooperatively and productively with her peers and

8    supervisors alike.  (Id.)  Nonetheless, Plaintiff believed her job performance was "perfect" and did

9    not need improvement in any areas.  (Pascual Depo. at 222:4-10; 223:15-17.)

10    On October 30, 2006, Ford completed a mid-term assessment of Plaintiff, which covered

11    the time period from April 23, 2006 to September 30, 2006.  (Pascual Depo. Ex. A-21.)[2]  The

12    assessment is a one-page form in which the employee's performance could be ranked as either

13    "Successful Level (Level 3)" or "Unacceptable Level (Level 1)."  (Id.)  Ford states that because

14    the form gave her only two options -- essentially "pass or fail" -- she felt it would be unfair to fail

15    Plaintiff at that juncture.  (Ford Decl. ¶ 5.)  As such, despite her concerns, Ford gave Plaintiff a

16    "pass" so that she could "turn things around" and perform and comport herself at an acceptable

17    level during the remaining six months of her probationary period.  (Id.)

18    Subsequent to her review, the problems with Plaintiff's job performance and behavior

19    persisted.  On multiple occasions, Plaintiff sent unprofessional emails to her supervisors, some of

20    which were in response to their concerns regarding her performance.  For example, on October 30,

21    2006, Plaintiff sent Ford a lengthy, antagonistic email concerning a seemingly unremarkable

22    incident involving a bag of chips.  (Pascual Depo. Ex. A-6.)  In another email, dated November 21,

23    2006, Plaintiff objected to Jiminez's instruction that she mail out closed cases, which was one of

24    her job duties.  (Id. A-8.)  Instead, Plaintiff informed Jiminez:  "I would appreciate it if you would

25    allow me to close cases myself and mail them out, instead of just giving me a bunch that were

26    already closed by you and then asking me to mail them out for you."  (Id. Ex. A-8.)  On February

27    _____

28    [2] The review form notes that the review period begins in April 23, 2006, though Plaintiff's hire date is actually April 24, 2006.

22, 2007, Jiminez sent Plaintiff a short email informing Plaintiff that she should be able to close more than four cases in a two-hour period.  (Id. A-14.)   Plaintiff responded that she was working on other tasks and told him, "So just stay put - - I am doing all what (sic) I could.  Okay?"  (Id.)

In addition to her supervisors, Plaintiff's job-related difficulties were noted by Judge Benjamin Parks (African-American, over age 40), the Chief ALJ, who has been in charge of the ODAR since October 2003.  (Shie Decl. Ex. X, Affidavits, Ex. E at 1.)   Judge Parks noted that Plaintiff was "unable to effectively perform all of the tasks required by a Case Technician (CT) within her probationary period."  (Id.)  He indicated that Plaintiff could not multi-task and that "[a]t no time did Ms. Pascual master successfully all of the various work-related duties of her position of CT by the time of termination."  (Id.)  Based upon his personal counseling sessions with the Plaintiff in August 2006 and November 2006, he noted that she lacked the requisite interpersonal skills which, in turn, impacted her performance.  (Id. at 2.)  Subsequently, in November or December 2006, he observed Plaintiff undergo training on the ODAR's computerized system used to record hearings, and concluded that she "never fully mastered the sequences of events to operate the equipment."  (Id. at 3.)  In fact, another ALJ asked him not to assign Plaintiff to record her hearings because she lacked confidence in Plaintiff's abilities.  (Id.)

On March 30, 2007, eleven months after hiring her, Montuya fired Plaintiff by issuing a notice of termination, effective immediately.  (Pascual Depo. Ex. A-16.)  The notice informed Plaintiff that she had been terminated due to her unacceptable work performance and unprofessional conduct in the workplace.  (Id.)  At no time prior to her termination did Plaintiff express any concern that she had been subjected to discrimination or harassment on the basis of her age or national origin.  (Montuya Decl. ¶ 11; Ford Decl. ¶ 7; Jiminez Decl. ¶ 7.)

**B.   PROCEDURAL SUMMARY**

Plaintiff filed a complaint with the EEO on or about May 23, 2007, complaining of workplace discrimination and harassment on account of her age and race.  With regard to her age, she claims that Jiminez questioned why she could not complete more file closures and asked whether her inability to do was because she was "weak" or because of her "age."  (Shie Decl. Ex. X, Affivavits, Ex. A at 2; Pascual Depo. at 128:8-12.)  As to her race, Plaintiff asserts that Jiminez

- 4 -

1  told her that she was difficult to understand because of her accent.  (Pascual Depo. at 136:17-

2  138:11.)[3]  However, Plaintiff cannot recall the particular dates or number of incidents where he

3  made such remarks.  (Id. at 129:19-130:13.)

4        The Agency investigated her complaint and obtained statements from Plaintiff, Montuya,

5  Jiminez, Ford, Judge Parks and Ronald Miecznkowski, Plaintiff's co-worker and mentor at the

6  ODAR.  (Shie Decl. Exs. X, Y.)  On April 14, 2008, the Agency issued its Final Agency Decision

7  in which it concluded that Plaintiff's claims of age and national origin discrimination and

8  harassment were unfounded.  (Id. Ex. Y at 7-8.)  On June 11, 2008, Plaintiff filed a pro se

9  Complaint in this Court, essentially restating her claims before the EEO.  Defendant now moves

10  for summary judgment on the ground that Plaintiff cannot, as a matter of law, meet the

11  requirements of the McDonnell Douglas test.  As to her hostile work environment claim, Defendant

12  argues that Plaintiff cannot show that the alleged conduct was sufficiently severe or pervasive to

13  alter her conditions of employment.[4]

14  **II.     LEGAL STANDARD**

15        Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is

16  no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

17  law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party bears

18  the initial burden of demonstrating the basis for the motion and identifying the portions of the

19  pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish

20  the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

21  _____

22      [3] In her affidavit submitted as part of the EEO investigation, Plaintiff made no mention of
Jiminez's alleged comment about having difficulty understanding her.  Rather, she offered the

23  conclusory statement that "I believe that race was a factor in my termination because Jiminez was
openly hostile to me and discriminated against me on many occasions regarding workplace issues."
(Shie Decl. Ex. Y, Affidavits, Ex. A at 3.)

24

25      [4] Following Defendant's submission of its reply on April 2, 2009, Plaintiff, without prior
leave of Court, filed a Response to Defendant's Reply Memorandum in Support of Defendant's
Summary Judgment on April 14, 2009, and what appears to be a revised version of that document

26  the following day on April 15, 2009.  Since Plaintiff filed these documents without permission,
they are not properly before the Court.  See Local Rule 7-3(d) ("[o]nce a reply is filed, no

27  additional memoranda, papers and letters may be filed without prior Court approval.").
Nevertheless, the Court notes that nothing in either of these documents in any way alters the

28  Court's analysis of Plaintiff's claims, as set forth below.

1   If the moving party meets this initial burden, the burden then shifts to the non-moving party to

2   present specific facts showing that there is a genuine issue for trial.   Fed.R.Civ.P. 56(e); Celotex,

3   477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

4          An issue of fact is "material" if, under the substantive law of the case, resolution of the

5   factual dispute might affect the outcome of the claim.  See Anderson, 477 U.S. at 248.  Factual

6   disputes are genuine if they "properly can be resolved in favor of either party."  Id. at 250.

7   Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a

8   reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the

9   material issue in his or her favor.  Id.  "If the evidence is merely colorable, or is not significantly

10  probative, summary judgment may be granted."  Id. at 249-50 (internal citations omitted).  Only

11  admissible evidence may be considered in ruling on a motion for motion for summary judgment.

12  Fed.R.Civ.P. 56(e); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).[5]

13  **III.     DISCUSSION**

14          **A.     RACE AND AGE DISCRIMINATION CLAIMS**

15                  **1.     Legal Framework**

16          Title VII provides that employers may not "discriminate against any individual with respect

17  to his compensation, terms, conditions, or privileges of employment, because of such individual's

18  race, color, religion, sex or national origin."  42 U.S.C.2000e-2(a)(1).  Similarly, the ADEA

19  provides that as to persons age 40 and over, "[i]t shall be unlawful for an employer … to fail or

20  refuse to hire or to discharge any individual or otherwise discriminate against any individual with

21  respect to his compensation, terms, conditions, or privileges of employment, because of such

22  individual's age."  29 U.S.C. § 623(a)(2).

23          A plaintiff may prove unlawful discrimination by producing "direct or circumstantial

24  evidence demonstrating that a discriminatory reason more likely than not motivated the employer."

25  Metoyer v. Chassman, 504 F.3d 919, 930 (9th Cir. 2007).  Alternatively, a plaintiff may rely on the

26  familiar McDonnell Douglas burden shifting framework to prove discrimination.  McDonnell

27

28          [5] Pro se litigants are subject to the same rules of procedure that govern represented litigants.
     King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Surrell v. California Water Service Co., 518 F.3d 1097, 1105 (9th Cir. 2008).  Though the McDonnell Douglas approach was developed in the context of a race discrimination claim, it also applies to age discrimination cases.  See Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir. 2008).

The McDonnell Douglas steps are as follows.  *First*, Plaintiff must establish a prima facie case of discrimination by showing that:  (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) similarly-situated individuals outside her protected class were treated more favorably.  See, e.g., Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1105-1106 (9th Cir. 2008).  *Second*, if a plaintiff establishes the prima facie case of discrimination, the burden then "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct."  Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003).  *Finally*, if the employer articulates a legitimate reason for its action, "the employee must then prove that the reason advanced by the employer constitutes a pretext for unlawful discrimination."  Diaz, 521 F.3d at 1207.  Regardless of who bears the burden of production, the employee always retains the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee.  Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1982).

### 2.    Prima Facie Case of Discrimination

There is no dispute that Plaintiff, who was then 67 years-old and Filipino, belongs to protected classes.[6]  There also is no dispute that she suffered an adverse employment action. Nevertheless, for the reasons that follow, the Court finds that Plaintiff cannot meet the second and fourth elements of the McDonnell Douglas test, i.e., that she was "qualified" to remain in the Case Technician position and that similarly situated persons outside of the protected class were treated more favorably.

---

[6] Plaintiff predicates her claim on "national origin" discrimination.  However, since she is complaining about discrimination because she is Filipino, her claim is actually one for race discrimination.  See Vasquez, 349 F.3d at 642 n.20.

### a)        Qualified for the Position

The second prong of the <u>McDonnell Douglas</u> test concerns whether the aggrieved employee "was performing his job in a satisfactory manner[.]"  <u>Messick v. Horizon Indus. Inc.</u>, 62 F.3d 1227, 1229 (9th Cir. 1995); <u>Diaz</u>, 521 F.3d at 1208 ("no reasonable juror could find that [plaintiff]'s performance was satisfactory" where the employee violated company policy despite prior warnings).  Construing the evidence in a light most favorable to Plaintiff, the Court finds that no reasonable jury could conclude that Plaintiff's job performance was satisfactory.

It is undisputed that Plaintiff took an inordinate amount of time to complete basic tasks, performed her job duties inefficiently, was unable to learn certain duties despite repeated training, was unreceptive to criticism and exhibited continuing difficulty maintaining cooperative and professional relationships with her peers and supervisors.  (Ford Decl. ¶¶ 3-5; Jiminez Decl. ¶¶ 3-5; Montoya Decl. ¶¶ 6-7; <u>e.g.</u>, Pascual Depo. at 133:10-134:16; 172:7-14.)  Judge Parks likewise provided a number of examples of her poor job performance, lack of interpersonal skills and inability to learn the requirements of the position despite repeated training.  (Shie Decl. Ex. X, Affidavits, Ex. E at 1-2.)  In addition, Plaintiff demonstrated questionable judgment and lack of professionalism, as evidenced by the confrontational emails to her supervisors.  (Pascual Depo., Exs. A-6, A-9, A-10, A-14, A-15).)  Montuya, Ford, Jiminez and Judge Parks each attempted to verbally address these various issues with Plaintiff, to no avail.  (Montuya Decl. ¶ 6; Ford Decl. ¶ 5; Jiminez Decl. ¶ 3; Shie Decl. Ex X, Affidavits, Ex. E at 1.)  Yet, in the face of these numerous issues, Plaintiff considered her work to be "perfect" and that her performance needed no improvement "in any way."  (Pascual Depo. at 222:4-10; 223:15-17.)

In her opposition, Plaintiff argues that her satisfactory performance is demonstrated by her six month performance appraisal, which she claims rated her as "Successful."  (Opp'n at 3.) However, the appraisal is insufficient to create a genuine issue of material fact.  Ford had two choices in the review form -- either rate Plaintiff "Unacceptable" or "Successful."  (Ford Decl. ¶ 5.) Despite her ongoing concerns regarding Plaintiff, Ford rated her as "Successful" with the hope that Plaintiff would take the warnings and suggestions she had received to heart.  (<u>Id.</u>)  Ford wanted to afford Plaintiff the opportunity to "turn things around" and improve her performance during the

1    remaining six months of her probationary period.  (Id.)  Thus, when placed in context, the mere

2    fact that Plaintiff "passed" her mid-term probationary review is insufficient to demonstrate a triable

3    issue of fact regarding her qualifications for the position.  See Merrick v. Farmers Ins. Group, 892

4    F.2d 1434, 1438 (9th Cir.1990) (fact that plaintiff received "satisfactory" reviews did not

5    undermine employer's reasons for promoting a younger employee).

6         Even if Plaintiff's six month review were sufficient to show that Plaintiff was meeting

7    expectations for the first six months of her employment, it does not address the substantial and

8    unrefuted evidence establishing that her performance and conduct issues continued *after* her mid-

9    term review.  For example, Judge Parks noted that despite having "*almost a year in her position*,"

10   Plaintiff still was unable to learn all of her required duties and that her overall performance was

11   marginal.  (Shie Decl. Ex. X, Affidavits, Ex. E at 2 (emphasis added).)  In August and November

12   2006, Judge Parks counseled Plaintiff on her repeated refusal to follow the ODAR's chain of

13   command when addressing workplace concerns.  (Id.)  He also noted problems in late November or

14   December 2006 concerning Plaintiff's inability to learn how to effectively run the computer-

15   operated equipment used to record hearings.  (Id. at 2-3.)  Judge Parks personally observed that

16   during her training, Plaintiff was argumentative with her instructor and that her lack of

17   interpersonal skills was interfering with her ability to learn how to operate the recording equipment

18   -- a skill that she ultimately never mastered.  (Id.)  Indeed, another administrative law judge asked

19   Judge Parks to *not* assign Plaintiff to record her hearings because she lacked confidence in her

20   abilities.  (Id.)

21        Aside from Judge Parks, the ongoing nature of Plaintiff's employment issues is verified in

22   the declarations of Montuya, Jiminez and Ford.  (Montuya Decl. ¶ 6; Jiminez Decl. ¶ 3; Ford Decl.

23   ¶¶ 3-5 and Ex. 1.)  Similarly, Plaintiff's emails to her supervisors, which post-date her midterm

24   review and continued through the end of February 2007, objectively and independently confirm

25   Defendant's concern with Plaintiff's lack of interpersonal skills.  While Plaintiff may have

26   personally believed that she was comporting herself perfectly, her personal belief is insufficient to

27   demonstrate a genuine issue of fact.  See Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270 (9th

28   Cir. 1996) ("[A]n employee's subjective personal judgments of [his] competence alone do not raise

1  a genuine issue of material fact."); <u>Kennedy v. Applause, Inc.</u>, 90 F.3d 1477, 1481 (9th Cir. 1996)

2  (no "genuine issue" created where the plaintiff's evidence is "uncorroborated and self-serving"

3  testimony).

4          Finally, the documentation submitted by Plaintiff with her opposition is insufficient to

5  avoid summary judgment.  None of the documents is authenticated and thus may not be considered

6  in adjudicating a summary judgment motion.  <u>See</u> <u>Orr</u>, 285 F.3d at 773.  But even if they were

7  admissible, these documents simply are not germane to whether Plaintiff was performing her job

8  duties or conducting herself in an acceptable manner.  Plaintiff's Attachment 1 is a copy of a Meet-

9  and-Deal Application, dated July 20, 2006, which apparently is intended to show that she was able

10  to "meet and deal with the public."  (Opp'n, Attachment 1.)  On its face, this document has no

11  relevance to Plaintiff's ability to perform her job duties as a Case Technician or to work effectively

12  and professionally with her peers and supervisors at the ODAR.  Likewise, Attachments 2 and 3

13  appear to relate to positions Plaintiff previously held in 2000 and 2001 with the Defense Finance

14  and Accounting Service and the Internal Revenue Service, respectively, and in no way are

15  probative of Plaintiff's job performance or conduct while working at the ODAR years later.  (<u>Id.</u>,

16  Attachment 2, 3.)  In sum, Plaintiff has failed to demonstrate that there are any genuine issues of

17  material fact relating to her ability to perform her job duties to the satisfaction of her supervisors.

18              **b)      Similarly Situated Employees**

19          Aside from her initial burden of demonstrating that she was qualified for the position at

20  issue, Plaintiff also must show as part of her prima facie case that similarly situated employees

21  (outside Plaintiff's protected class) were treated more favorably than her.  On summary judgment,

22  Plaintiff bears the burden of demonstrating that the employees whom she claims were treated more

23  favorably were "similarly situated in all material respects."  <u>Moran v. Selig</u>, 447 F.3d 748, 755 (9th

24  Cir. 2006); <u>accord</u> <u>Vasquez v. County of L.A.</u>, 349 F.3d 634, 641 (9th Cir. 2004) (holding

25  "individuals are similarly situated when they have similar jobs and display similar conduct").

26          Plaintiff has not proffered any evidence to show that other non-Filipino probationary Case

27  Technicians or probationary Case Technicians under the age of 40 were treated more favorably

28  than her.  By Plaintiff's own account, she was the *only* probationary employee in the ODAR during

the relevant time period and indeed admits that she is "not aware of any other probationary employees who were treated in … a different way that [she] was."  (Shie Decl. Ex. X, Affidavits, Ex. A at 3).)  In addition, it is undisputed that Plaintiff's supervisor, Emilia Montuya (herself over age 50 and Filipino), did not supervise other Case Technicians who were in their probationary period.  (Montuya Decl. ¶¶ 2, 9.)  In short, Plaintiff simply cannot show that similarly-situated probationary employees were treated more favorably than her.  E.g., Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999) (holding that, to be similarly situated, an employee must have the same supervisor, be subject to the same standards, and have engaged in the same conduct).

### 3.    Legitimate, Non-Discriminatory Motive

Even if Plaintiff had established a prima facie case of discrimination, which she has not, Defendant has articulated a legitimate, non-discriminatory reason for her separation.  See Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123-24 (9th Cir. 2000) (once a prima facie case has been shown, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action.").  As discussed above, Defendant had ample, permissible grounds for terminating Plaintiff during her probationary period.  Among other things, Plaintiff was inefficient, combative, unreceptive to instruction and correction.  That alone is sufficient for purposes to the McDonnell Douglas test.  See Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1075 (9th Cir. 2003) (employee's poor attitude and failure to maintain strong working relationships with co-workers satisfied legitimate, non-discriminatory reasons for termination).

Moreover, there is no evidence that Plaintiff's age or race played any role in the decision to terminate her.  The decision to separate Plaintiff was made by Montuya, whom Plaintiff concedes did not discriminate against her.  (Shie Decl., Ex. X, Affidavits, Ex. A at 2).  Aside from the Plaintiff's failure to adduce any direct or circumstantial evidence of unlawful discrimination, her claims are undermined by the fact the decision-maker, Montuya, who both hired and fired Plaintiff, is in the same protected classes as her.  See Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996) ("We therefore hold that where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a

1   strong inference arises that there was no discriminatory motive."); Coghlan v. American Seafoods

2   Co. LLC, 413 F.3d 1090, 1096-97 (9th Cir. 2005) (affirming summary judgment for defendant

3   where the person who hired the plaintiff and engaged in the allegedly discriminatory conduct over

4   a three year period were of the same national origin).

5          Plaintiff does not dispute that it was *Montuya* who made the decision to terminate her nor

6   does she dispute that her age and race played no role Montuya's decision.  Instead, she suggests

7   that Montuya was "influenced" by "Jiminez, a White Puerto Rican in his thirties."  (Shie Decl., Ex.

8   X, Affidavits, Ex. A at 2.)  There is no dispute that Montuya consulted with Plaintiff's immediate

9   supervisors before making her final decision.  (Montuya Decl. ¶ 3.)  However, Plaintiff does not

10  allege or offer (nor has the Court identified) any evidence establishing that Jiminez's alleged

11  comment in any way affected Montuya's decision or was otherwise tied *directly* to Plaintiff's

12  termination.  Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993) (comment by a supervisor

13  that "[w]e don't necessarily like grey hair" insufficient to avoid summary judgment because it "was

14  not tied directly to Nesbit's termination."); see also See Vasquez, 349 F.3d at 640 (explaining that

15  where a supervisor who had displayed discriminatory animus in the past was not the

16  decisionmaker, plaintiff must have to show "a nexus between [that supervisor's] discriminatory

17  [animus] and [the] subsequent employment decisions").  To the contrary, the uncontroverted

18  evidence establishes that Montuya terminated Plaintiff for legitimate, non-discriminatory reasons.

19  (Montuya Decl. ¶ 3, 10.)[7]

20              **4.      Pretext**

21          Where the employer presents legitimate reasons for the challenged action, "the burden

22  shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are

23  pretextual."  Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 849 (9th Cir. 2004).  Evidence to show

24  pretext must be both specific and substantial in order to overcome the articulated legitimate reasons

25  put forth by the employer.  See Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029 (9th

26

27          [7] Indeed, as discussed, Judge Parks and Ford observed and experienced the same problems
    with Plaintiff's performance and conduct.  Thus, Montuya had an ample basis, entirely independent
    of Jiminez, upon which to conclude that Plaintiff should be separate during her probationary
28  period.

1    Cir. 2006).  Here, Plaintiff has presented no such evidence.  Instead, Plaintiff's opposition merely

2    attacks ODAR management - namely, Montuya, Ford, Jiminez and Judge Parks - claiming that

3    each of them made "false" and "dishonest" statements in their declarations and during the EEO

4    investigation.  (Opp'n at 4-5, 6-10.)  Plaintiff's unsupported and non-specific attacks regarding the

5    credibility of ODAR management are insufficient as a matter of law.  See Steckl v. Motorola, Inc.,

6    703 F.2d 392, 393 (9th Cir. 1983) (affirming summary judgment for employer where the plaintiff

7    "produced no facts which, if believed, would have shown pretext and thus tendered an issue for

8    trial."); see also Surrell, 518 F.3d at 1103 ("Conclusory statements without factual support are

9    insufficient to defeat a motion for summary judgment.").

10          At bottom, Plaintiff has failed to demonstrate a prima facie case of discrimination or

11   otherwise satisfy the requirements of McDonnell Douglas.  Her opposition offers nothing more

12   than factually-barren, conclusory statements that she was the victim of discrimination.  The Court

13   concludes that Plaintiff has failed to demonstrate the existence of any genuine issues of material

14   fact, and therefore, grants summary judgment in favor of Defendant on Plaintiff's claims for age

15   and race discrimination.

16          **B.      HOSTILE WORK ENVIRONMENT CLAIM**

17          To prevail on a hostile workplace claim based on age or race, Plaintiff must show:  (1) that

18   she was subjected to verbal or physical conduct of an ageist or racial nature; (2) that the conduct

19   was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the

20   conditions of the plaintiff's employment and create an abusive work environment.  See Fuller v.

21   City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995).  The work environment also must be

22   perceived as abusive  both subjectively and objectively.  Vasquez, 349 F.3d at 642.  In determining

23   whether conduct was sufficiently severe or pervasive, the court examines at "all the circumstances,

24   including the frequency of the discriminatory conduct; its severity; whether it is physically

25   threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

26   with an employee's work performance."  Id. (internal citations and quotations omitted).

27          In the instant case, Plaintiff cannot demonstrate that the conduct at issue was sufficiently

28   pervasive and severe, as a matter of law.  According to Plaintiff, the "hostile work environment"

1  resulted from Jiminez's remarks to her regarding her job performance.  When asked during her

2  deposition to identify the incidents forming the basis of her claim, Plaintiff responded that Jiminez

3  told her she was not worth what she was being paid, and asked whether her apparent inability to

4  process files more quickly was due to her "weakness" or "age." (Pascual Depo. at 127:15-128:25.)

5  When queried how frequently he made such comments, Plaintiff confirmed that they were *not*

6  made daily, and ultimately, that she could not recall how often he made such remarks.  (Id. at

7  129:19-130:13.)  As to her race, the only specific example Plaintiff could recall was an incident in

8  which Jiminez told Plaintiff that she was difficult to understand compared to two co-workers, who

9  also were from the Philippines.  (Id. at 136:17-138:11.)

10         Jiminez's alleged comments fall far short of the type and frequency of conduct required to

11  demonstrate a hostile work environment.  For example, in Nichols v. Azteca Restaurant

12  Enterprises, Inc., 256 F.3d 864 (9th Cir. 2001), the Ninth Circuit held that the plaintiff was

13  subjected to an objectively hostile work environment where he was subjected to an "unrelenting

14  barrage of verbal abuse…." Id. at 872.  Plaintiff's co-workers and supervisor referred to Plaintiff

15  in Spanish and English as "she" and "her" and mocked him for carrying his serving tray "like a

16  woman." Id.  He also was subjected to name-calling in both English and Spanish with epithets

17  such as "faggot" and "fucking female whore." Id. at 870.  This abuse occurred at least once a week

18  and often several times a day.  Id.  Based on the record presented, the court held that the conduct

19  directed at Plaintiff was designed to humiliate and anger him, and was sufficiently severe and

20  pervasive to alter the terms and conditions of his employment.  Id. at 873.

21         In contrast, the Ninth Circuit has rejected hostile work environment claims involving

22  circumstances far more severe and pervasive than those claimed by Plaintiff.  See Sanchez v. City

23  of Santa Ana, 936 F.2d 1027, 1031, 1037 (9th Cir. 1990) (affirming conclusion that plaintiffs failed

24  to prove a hostile work environment even where the employer allegedly made racially offensive

25  slurs, kept illegal personnel files on the plaintiffs because they were Latinos, provided unsafe

26  vehicles to Latino police officers, posted a racially offensive cartoon, targeted Latinos when

27  enforcing rules, and did not provide adequate back-up to Latino police officers); Vasquez, 349 F.3d

28  at 643-44 (finding no hostile environment even where plaintiff was told that he should consider

transferring to work in the field because "Hispanics do good in the field," was told that he had "a typical Hispanic macho attitude," a co-worker made continual, false complaints about the plaintiff to his supervisor, and plaintiff was yelled at in front of others); <u>Manatt v. Bank of Am.</u>, 339 F.3d 792, 798 (9th Cir. 2003) (finding that jokes using the phrase "China man," ridiculing for mispronunciation of names, and employees pulling their eyes back with their fingers to mock the appearance of Asians did not constitute a hostile work environment for a Chinese woman).

Plaintiff fails to proffer any admissible evidence to support her claim that she was subjected to a hostile work environment.  She merely repeats her allegations regarding Jiminez's alleged comments.  (Opp'n at 4-5.)  Assuming that such comments were made, no reasonable jury could find that they were sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and thus create a hostile work environment.  At most, Plaintiff has shown stray and/or sporadic comments that, as the above-discussed legal authorities confirm, are legally insufficient to constitute an impermissible, hostile work environment.  <u>See also</u> <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1284-85 (9th Cir. 2000) (employer's statement that plaintiff was not "young and promotable" insufficient to overcome summary judgment); <u>Merrick v. Farmers Ins. Group</u>, 892 F.2d 1434, 1438-39 (9th Cir.1990) (hiring supervisor's statement that he replaced plaintiff with younger worker because he was a "bright, intelligent, knowledgeable young man" insufficient to overcome summary judgment).  The Court therefore grants Defendant's motion for summary judgment as to Plaintiff's hostile work environment claim.

**IV.    CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment is GRANTED.  This Clerk shall close the file and terminate any pending dates and/or deadlines.

Dated: April 24, 2009

_____
Hon. Saundra Brown Armstrong
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA


CORAZON S PASCUAL,

        Plaintiff,

  v.

MICHAEL J ASTRUE et al,

        Defendant.
_____/

                                Case Number: CV08-02906 SBA

                                 **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 27, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Corazon S. Pascual
P.O. Box 471454
San Francisco, CA 94147


Dated: April 27, 2009
                            Richard W. Wieking, Clerk

                                By: LISA R CLARK, Deputy Clerk